UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| STEVEN E. MCQUEEN, | : | Case No. 1:09-cv-343 |
| --- | --- | --- |
| Plaintiff, | : | Judge Herman J. Weber |
| | : | Magistrate Judge Timothy S. Black |
| vs. | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| Defendant. | : | |

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND SUPPORTED BY SUBSTANTIAL EVIDENCE, AND AFFIRMED; AND (2) THIS CASE BE CLOSED**

This is a Social Security disability benefits appeal. At issue is whether the administrative law judge ("ALJ") erred in finding Plaintiff "not disabled" and therefore unentitled supplemental security income ("SSI"). (*See* Administrative Transcript ("Tr.") (Tr. 12-19) (ALJ's decision)).

**I.**

On October 20, 2005, Plaintiff filed an application for SSI, alleging that he became disabled on January 1, 1992, due to seizures, bilateral posttraumatic encephalomalacia, borderline functioning, and alcohol dependence. (Tr. 14).

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

Upon denial of Plaintiff's claims on the state agency levels, he requested a hearing *de novo* before an ALJ. (Tr. 30). A hearing was held on July 1, 2008, at which Plaintiff appeared with counsel and testified. (Tr. 36). A vocational expert, Dr. Bending, was also present and testified. (*Id.*)

The ALJ preliminarily determined that all prior applications were beyond the time frame for re-opening. Because supplemental security income is not payable prior to the month following the month in which the application was filed (20 CFR 416.335), the ALJ properly determined that it was sufficient to consider whether the claimant was disabled since October 20, 2005. (Tr. 12). On July 23, 2008, the ALJ issued a written decision denying the claimant's application for SSI. (Tr. 12-29). Plaintiff then filed a request for review which the Appeals Council denied on March 13, 2009. (Tr. 4). Subsequently, Plaintiff commenced this action for judicial review of the Commissioner's final decision.

At the time of the hearing, Plaintiff was 45 years old. (Tr. 19, 45). Plaintiff has no past relevant work experience. (Tr. 18, 48-49).

The ALJ's "Findings," which represent the rationale of his decision, were as follows:

1. The claimant has not engaged in substantial gainful activity since October 20, 2005, the filing date of this application (20 CFR 416.920(b) and 416.971, *et seq*.).

2. The claimant has the following severe impairments: complex partial seizures with secondary generalization, bilateral posttraumatic encephalomalacia, borderline to low average cognitive functioning, and alcohol dependence (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals on eof the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire records, the undersigned finds the claimant has the following residual functional capacity: Physically, he can lift/carry and push/pull up to 50 pounds occasionally, 25 pounds frequently; in a normal eight-hour workday, he can stand/walk a total of six hours and sit a total of six hours; he should never climb ladders, ropes, or scaffolds; and he should not work at unprotected heights or around dangerous machinery. Mentally, the claimant is limited to one-and two-step instructions and routine, repetitive tasks. Due to his limited verbal fluency, he should also avoid jobs that require a good command of language.

5. The claimant has no past relevant work (20 CFR 416.965).

6. Born July 22, 1963, the claimant was 42 years old on the filing date, which is defined as a "younger individual age 18-49" (20 CFR 416.963).

7. The claimant has a high school equivalency degree (GED) and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he can perform (20 CFR 416.960(c) and 416.966).

10. The claimant has not been under a disability, as defined in the Social Security Act, since October 20, 2005, the date this application was filed (20 CFR 416.920(g)).

(Tr. 14-19).

In summary, the ALJ concluded that Plaintiff was not under a disability as defined by the Social Security Regulations and was therefore not entitled to SSI. (Tr. 19).

On appeal, Plaintiff argues that: (1) the ALJ erred in rejecting the treating physicians' opinions that the frequency of Plaintiff's seizures were not related to missing doses of medications or to alcohol usage; (2) the ALJ erred in failing to discuss and sufficiently articulate findings to support his determination that the claimant did not meet or equal the listings; and (3) the ALJ erred in failing to consider and/or discuss all evidence relevant to a determination of the frequency of the claimant's seizures, including seizure reports prepared by third parties, and the testimony of the claimant's mother and sister. Each argument will be addressed in turn.

## II.

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. As the Sixth Circuit has explained:

> "The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm."

*Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The claimant bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. § 404.1512(a). That is, he must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**A.**

The undersigned will consider Plaintiff's first and second assignments of error in combination. For his first assignment of error, Plaintiff maintains that the ALJ erred when he rejected the treating physicians' opinions that the frequency of Plaintiff's seizures were not related to missing doses of medications or to alcohol usage. For his second assignment of error, Plaintiff claims that the ALJ erred in failing to discuss and sufficiently articulate findings to support his determination that Plaintiff did not meet or equal the listings.

The relevant medical record reflects that:

Plaintiff had a traumatic brain injury in 1985 and has had seizures since that time. (Tr. 280). Plaintiff also has a history of alcohol abuse, including multiple driving under the influence citations. (Tr. 190). Plaintiff filed the SSI application at issue in this case on October 20, 2005. (Tr. 45). Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application, and the facts in this brief will accordingly focus on the evidence immediately prior to and following October 20, 2005. *See* 20 C.F.R. § 416.335.

In June 2005, staff at the Department of Veteran's Affairs Medical Center ("VAMC") noted that Plaintiff was drinking eight to nine beers per day. (Tr. 289). Plaintiff was hospitalized from July 18 through August 8, 2005, for alcohol dependence. (Tr. 168). Upon discharge, Plaintiff indicated that he had no interest in follow-up programs, and felt that going to Alcoholic's Anonymous ("AA") and staying busy would help him. (Tr. 169).

On September 8, 2005, Dr. David Isaradisaikul examined Plaintiff at the neurology clinic. (Tr. 189). Plaintiff reported having three seizures since June 2005, when he made an initial visit to the epilepsy clinic. (*Id.*) Plaintiff reported that two of those seizures occurred during his hospitalization in July and August 2005, but Dr. Isaradisaikul noted that the rehabilitation discharge summary did not indicate the occurrence of any seizures. (Tr. 190). Dr. Isaradisaikul prescribed increasing amounts of carbamazepine (anticonvulsant) and recommended follow-up in two months. (Tr. 191).

On November 10, 2005, Dr. Jerzy Szaflarski, examined Plaintiff based on complaints of seizures. (Tr. 186). Plaintiff's mother and sister provided Dr. Szaflarski with his seizure history, reporting that he had multiple seizures per month, but stating that his seizures were much better with a higher dose of carbamazepine. (*Id.*) Dr. Szaflarski noted that Plaintiff had a "history of noncompliance, especially when he was drinking alcohol excessively." (*Id.*)

In December 2005, Dr. Esberdado Villanueva, a state agency medical consultant, opined that Plaintiff could perform a range of medium work,[2] but could never climb ladders, ropes, or scaffolds, or work at unprotected heights or around dangerous machinery. (Tr. 296-299). Dr. Villanueva acknowledged Plaintiff's seizure condition. (Tr. 296). In May 2006, Dr. Gary Hinzman, another state agency medical consultant, affirmed Dr. Villanueva's findings. (Tr. 306). Neither state agency doctor found that Plaintiff met or equaled any Medical Listings. (Tr. 21-22).

On January 25, 2006, medical staff noted that Plaintiff had not contacted his AA sponsor or gone to any meetings. (Tr. 321). Plaintiff's last drinking binge had ended three weeks prior. (*Id.*) On February 3, 2006, Plaintiff told Edwin Barrett, Ph.D., that the rehabilitation program "helped for a few months, but now he drinks a 6 pack (3 24 oz

---

[2] "Medium work invovles lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 416.967(c). A person must also be able to frequently stoop, crouch, and climb ramps and stairs, but limitations on climbing ladders/ropes/scaffolds, kneeling, and crawling would not significantly affect the occupational base. *See* SSR 83-14, 1983 WL 31254; SSR 85-15, 1985 WL 56857.

beers) a day, a couple times a month." (Tr. 323). Dr. Barrett found no evidence of a memory disorder in functional testing. (Tr. 325). He opined that Plaintiff had the cognitive capacity to be gainfully employed; however, his alcohol binges and recurrent seizures reduced the chances of future employment. (*Id*.) Dr. Barrett concluded that alcohol increased Plaintiff's risk of seizures. (*Id*.)

On February 16, 2006, Plaintiff's mother and sister reported to Dr. Isaradisaikul that Plaintiff's seizures were milder and shorter in nature since Plaintiff had started taking lamotrigine (anticonvulsant). (Tr. 341). Dr. Szaflarski also completed an examination of Plaintiff on February 16, 2006. (Tr. 342). Plaintiff's mother and sister reported numerous seizures and Plaintiff reported that he had not abused alcohol in the last several months, although he had up to three beers every two to three weeks. (*Id*.) On February 27, 2006, Plaintiff admitted to drinking on weekends with his brother, and said he had gotten drunk the previous Friday. (Tr. 339).

In April 2006, Dr. Szaflarski wrote a letter at the request of Plaintiff's attorney explaining Plaintiff's condition based on his last examination in February 2006. (Tr. 304). Based on information provided by Plaintiff, Dr. Szaflarski noted that Plaintiff had between seven and eleven seizures per month, which he opined were not related to missing any medications or abusing alcohol. (*Id*.) Dr. Szaflarski opined that Plaintiff's seizures impaired his ability to obtain gainful employment, rendering him disabled. (*Id*.)

On June 1, 2006, Plaintiff reported to Dr. Szaflarski that, based on tallies kept by

his sister, he had four to five seizures per month, which was a "significant decrease from approximately 10 to 11 seizures prior to increasing the dose of lamotrigine." (Tr. 334). On September 14, 2006, Plaintiff reported to Dr. Szaflarski that his seizure frequency had decreased since he increased the dosage of lamotrigine in June 2006 and Plaintiff had not had any seizures since July 2006. (Tr. 413).

On January 11, 2007, Dr. Szaflarski noted that Plaintiff had recently been noncompliant with taking his medications resulting in recurrence of seizures. (Tr. 405). Dr. Szaflarski also noted that Plaintiff had recently increased his alcohol consumption. (Tr. 406). Dr. Szaflarski concluded that Plaintiff was medication noncompliant. (*Id.*) Plaintiff also saw Angela Rackley, M.D., on January 11, 2007, and she concluded that Plaintiff's recurrent seizures were likely due to noncompliance. (Tr. 408).

On January 31, 2007, Plaintiff denied any seizures since his January 11, 2007, appointment. (Tr. 402). Plaintiff admitted that he was not taking any of his medications other than carbamazepine. (Tr. 403).

At a May 17, 2007, examination by Dr. Rackley, Plaintiff reported that he was not compliant with his medications. (Tr. 400). He said his failure to comply was due to the pharmacy refusing to send him medications through the mail. (*Id.*) Plaintiff reported having two seizures in the past two weeks, but prior to his medication running out, he experienced one to two per month. (*Id.*) Dr. Rackley questioned Plaintiff's explanation and called the pharmacy in his presence. (*Id.*) The pharmacy representative denied Plaintiff's accusations and verified that he had plenty of refills. (*Id.*) Dr. Rackley concluded that Plaintiff had been noncompliant on many occasions. (*Id.*)

On June 21, 2007, Plaintiff denied any recent seizures or problems tolerating the restart of his medications. (Tr. 399). He reported that he still was binge drinking at least once weekly and did acknowledge that his drinking and noncompliance with medication "seem[ed] to provoke the intermittent seizures that he [did] have." (*Id.*)

On August 23, 2007, Plaintiff reported to Dr. Rackley that he had been compliant with his medications resulting in him being seizure-free for approximately three weeks. (Tr. 392). On October 18, 2007, Plaintiff reported to Dr. Rackley that he had a seizure four days before the examination and that he was averaging approximately two seizures per month. (Tr. 386). Dr. Rackley found that Plaintiff's seizures were "often associated with medication noncompliance," and that "[b]etter compliance over the past several months [lead to] marked improvement in seizure frequency." (Tr. 388).

Dr. Sheetal Malik wrote a letter dated June 16, 2008, explaining that he recently took over care of Plaintiff from Dr. Szaflarski, though he did not explain exactly when this transition took place. (Tr. 417). He noted that Plaintiff's mother came to his last examination and assured Dr. Malik that Plaintiff did take his medication as prescribed and was not skipping doses "as implied in previous notes." (*Id.*) Plaintiff's mother also stated that he was very forgetful. (*Id.*) Based on the reports from Plaintiff's mother, Dr. Malik concluded that Plaintiff was taking his medications as prescribed, but still having seven to eleven seizures per month, which he opined were "not related to missing doses of meds or to alcohol usage." (*Id.*) Dr. Malik opined that Plaintiff should not drive,

operate heavy machinery, or climb ladders, and he considered Plaintiff disabled. (Tr. 417-18).

At his July 2008 hearing, Plaintiff testified he did not realize when he had seizures and had to rely on his mother to tell him . (Tr. 432). He did not keep any sort of calendar to document the seizures. (*Id.*) Plaintiff testified that when he had a seizure, he would usually bite his tongue and have urinary incontinence. (Tr. 439). Plaintiff said he did not binge on alcohol, but did have "a couple of beers" approximately once a month. (Tr. 432). He did not think his alcohol consumption had any impact on his seizure severity or frequency. (Tr. 432-33). Plaintiff testified that he skipped doses of his medication, but did not think that had any impact on his seizure severity or frequency. (Tr. 433). Plaintiff said that he always took the prescribed dosage of his medications and never forgot to refill them. (Tr. 438-39).

Plaintiff's mother, Geneva McQueen, testified she had not recently kept a documented record of Plaintiff's seizures. (Tr. 441). She said Plaintiff had four or five seizures in June 2008. (*Id.*) She said he had missed taking his medication "a time or two," and drank "maybe once a month, twice a month, and he only drinks two, three, four beers," which she did not think increased his seizure severity or frequency. (Tr. 442-443). She used to give him his medication, but for the past year she said he was taking it on his own. (Tr. 445). She sometimes helped him refill his prescriptions, but she said he did it most of the time. (Tr. 446). She testified that Plaintiff had never gone a month

without taking his medication, and she was surprised to hear that Plaintiff told his doctors he had gone months without medication. (Tr. 445-46). She was also surprised to hear that Plaintiff had stated that consuming alcohol and not taking his medication provoked seizures. (Tr. 446). She believed that Plaintiff made erroneous statements to his doctors and that alcohol consumption did not contribute to his seizures. (Tr. 449-50).

Plaintiff's sister, Rhonda Wagers, testified that she saw Plaintiff two to three times a month and observed him having a seizure once a month. (Tr. 453). She said that she had seen Plaintiff "a little drunk maybe on two occasions," but she had not seen alcohol contribute to his seizures. (Tr. 454, 458). She testified she talked to Dr. Malik and explained that many of Plaintiff's statements in the medical treatment notes were not true. (Tr. 454).

Plaintiff argues that his documented seizure activity either met or equaled Listing 11.02. However, the criteria of Listing 11.02 can only be satisfied if "the impairment persists despite the fact that the individual is following prescribed antiepileptic treatment." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.00A. The ALJ must also consider in his overall assessment whether the "use of alcohol or drugs affects adherence to prescribed therapy or may play a part in the precipitation of seizures." *Id*.

Further, all Listing criteria must be met concurrently for a period of twelve continuous months. 20 C.F.R. §§ 416.909, .925(c)(3), (4). The claimant has the burden of demonstrating all of the required listing level findings. *See Sullivan v. Zebley*, 493

U.S. 521, 525 (1990) ("For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severe, does not qualify."); *Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("In order to be found disabled based upon a listed impairment, the claimant must exhibit all the elements of the listing. It is insufficient that a claimant comes close to meeting the requirements of a listed impairment.") (citations omitted).

Plaintiff argues that the opinions of Dr. Szaflarski and Dr. Malik prove that his alcohol abuse and medication noncompliance did not contribute to his seizure frequency. (Doc. 4 at 11). However, a treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight only if it is supported by medical findings and is consistent with substantial evidence in the record. *See* 20 C.F.R. § 416.927(d). An ALJ may decline to afford treating physicians even substantial weight, as long as he minimally articulates his reasons. (*Id*.) As the ALJ pointed out in his decision, Dr. Malik's opinion was "markedly inconsistent with [Plaintiff's] documented medical history – and his own admissions." (Tr. 17-18). Rather, Dr. Malik's opinion was conclusory and – as the ALJ pointed out – largely based on the statements of Plaintiff's mother. (Tr. 17). *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 286 (6th Cir. 2009) ("Conclusory statements from physicians are properly discounted by ALJs.").

The ALJ's analysis also addressed Dr. Szaflarski's opinion, which was essentially the same as Dr. Malik's opinion. *See Nelson v. Comm'r of Soc. Sec.*, 195 Fed. Appx. 462, 470-471 (6th Cir. 2006). Notable inconsistencies between the opinions of Dr. Malik and Dr. Szaflarski and the remainder of the record included Dr. Barrett's February 2006 conclusion that alcohol increased Plaintiff's risk of seizures. (Tr. 325). Dr. Rackley also found on several occasions that Plaintiff's seizures were "often associated with medication noncompliance." (Tr. 388, 400, 408). Dr. Szaflarski's opinion was also inconsistent with his own medical records, as he concluded in January 2007 – after writing the April 2006 letter – that Plaintiff's noncompliance with taking his medications resulted in a recurrence of seizures. (Tr. 405). He also previously noted that Plaintiff had a "history of noncompliance, especially when he was drinking alcohol excessively." (Tr. 186). Even Plaintiff acknowledged in June 2007 that his drinking and noncompliance with medication "seem[ed] to provoke the intermittent seizures." (Tr. 399).

Additionally, when Plaintiff did comply with his doctor's recommendations, he enjoyed significant relief. For instance, in August 2007, Plaintiff reported to Dr. Rackley that he had been compliant with his medications resulting in him being seizure-free for approximately three weeks. (Tr. 392). Because the opinions of Dr. Szaflarski and Dr. Malik were inconsistent with other substantial evidence – including Plaintiff's own

statements[3] – the ALJ had a reasonable basis for not giving them substantial weight.

Specifically, the state agency medical consultants, Dr. Villanueva and Dr. Hinzman, concluded that Plaintiff did not meet or equal any listings. (Tr. 21-22). *See* SSR 96-6p, 1996 WL 374180 ("The signature of a State agency medical or psychological consultant on [a] Disability Determination and Transmittal Form . . . ensures that consideration by a physician (or psychologist) designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review."). The Social Security regulations and rulings expressly recognize these consultants as "highly qualified physicians and psychologists who are also experts in Social Security disability evaluations," and the ALJ was required to receive their opinions into the record and give them appropriate weight. 20 C.F.R. § 416.927(f)(2)(i); SSR 96-6p.

Because Plaintiff failed to carry his step three burden and show that his medication noncompliance and alcohol abuse did not contribute to the frequency and severity of his seizures, and substantial evidence supported the ALJ's finding that Plaintiff did not meet or equal any listings, the undersigned finds that the ALJ's decision is supported by substantial evidence.

---

[3] On January 31, 2007, Plaintiff openly admitted not taking any of his medications. (Doc. 15). In May 2007, Plaintiff said he had run out of both Lamictal and carbamzxepone and had not been taking either medication for about two months. In the last two weeks, he had two seizures; whereas, prior to running out of the medications, he had been experiencing only one or two seizures per month. *Id.* On June 21, 2007, Plaintiff admitted that he was still binge drinking at least once weekly and acknowledged that this seemed to provvide the intermittent seizures (along with running out of his medications). *Id.*

## B.

For his final assignment of error, Plaintiff claims that the ALJ erred by failing to consider and/or discuss all evidence relevant to a determination of the frequency of the claimant's seizures, including seizure reports prepared by third parties, and the testimony of the claimant's mother and sister.

The ALJ's assessment of credibility is entitled to great weight and deference, since he had the opportunity to observe the witness's demeanor. *Duncan v. Sec'y of Health & Human Servs.,* 801 F.2d 847, 852 (6th Cir. 1986) (any credibility determinations concerning subjective complaints of pain are the exclusive domain of the hearings officer).

> The assessment of a claimant's assertions of disabling pain is made in light of factors set forth in 20 C.F.R. § 404.1529, summarized in a two-part test:
> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine:
> (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Infantado v. Astrue,* 263 Fed. Appx. 469, 475 (6th Cir. 2008) (quoting *Felisky,* 35 F.3d at 1038-39).

Plaintiff, his mother, and his sister alleged that he complied with medication and his alcohol abuse did not affect his seizure activity. The ALJ had to consider all relevant factors in determining the validity of these allegations. 20 C.F.R. § 416.929(c)(3).

Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997); SSR 96-7p, 1996 WL 374186. An ALJ's credibility determinations are entitled to "great weight." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) ("Upon review, we are to accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying.").

In this case, the ALJ found Plaintiff's history of noncompliance and alcohol abuse required a finding that Plaintiff did not meet or equal Listing 11.02. (Tr. 15). The ALJ found that the allegations of Plaintiff, his mother, and his sister were inconsistent with substantial evidence in the record, making them "no more than partially credible." (Tr. 15-17). Plaintiff claims that the ALJ's analysis erroneously relied on evidence that predated Plaintiff's alcohol rehabilitation and the relevant date for consideration of SSI benefits – October 20, 2005. However, the record also shows significant evidence of Plaintiff's noncompliance and alcohol abuse that occurred after October 20, 2005.

Notably, Plaintiff was binge drinking in early January 2006. (Tr. 321). In February 2006, Plaintiff reported drinking a six pack of beer a day, a couple times a month. (Tr. 323). In late February 2006, Plaintiff admitted to drinking on the weekends with his brother and said he had gotten drunk on the previous Friday. (Tr. 339). Around

January 2007, Plaintiff increased his alcohol consumption. (Tr. 406). In June 2007, Plaintiff admitted to binge drinking at least once a week. (Tr. 399). The record also contains several instances in which Plaintiff was noncompliant in taking his prescribed medications, such as his own reports of noncompliance in January and May 2007. (Tr. 400, 403).

The ALJ reasonably concluded that Plaintiff's "noncompliance with his medications cannot be attributed to residuals of the traumatic brain injury," because the objective evidence showed Plaintiff's memory was normal. (Tr. 15, 325). The undersigned finds that the testimony of Plaintiff, his mother, and sister, was inconsistent with substantial evidence in the record. Therefore, the ALJ had a reasonable basis for assigning their testimony little weight. *See* 20 C.F.R. § 416.929(c)(3).

Accordingly, the undersigned finds that the ALJ's credibility findings are supported by substantial evidence.

### III.

For the foregoing reasons, Plaintiff's assignments of error are unavailing. The ALJ's decision is supported by substantial evidence and should be affirmed.

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner, that Plaintiff was not entitled to SSI, be found **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**; and, as no further matters remain pending for the Court's review, this case be **CLOSED.**

**IT IS SO RECOMMENDED.**

Date:  <u>April 12, 2010</u>     <u>s/ Timothy S. Black</u>
                                  Timothy S. Black
                                  United States Magistrate Judge

UNITED STATES DISTRICT COURT
                        SOUTHERN DISTRICT OF OHIO
                            WESTERN DIVISION

STEVEN E. MCQUEEN,                    :    Case No. 1:09-cv-343
                                      :
       Plaintiff,                     :    Judge Herman J. Weber
                                      :    Magistrate Judge Timothy S. Black
vs.                                   :
                                      :
COMMISSIONER OF                       :
SOCIAL SECURITY,                      :
                                      :
       Defendant.                     :

                                   **NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN DAYS** after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within **FOURTEEN DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 106 (1985).